David E. TRAWICK, D.D.S., Petitioner,

v.

DRUG ENFORCEMENT
ADMINISTRATION,
Respondent.

No. 88–3815.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1988.
Decided Nov. 15, 1988.

Teresa L. Conrad (Casstevens, Hanner, Gunter & Gordon, P.A., Charlotte, N.C., on brief), for petitioner.

Harry Stephen Harbin (John L. Kuray, Narcotic and Dangerous Drug Section, Crim. Div., Madeleine R. Shirley, Office of Chief Counsel, Drug Enforcement Admin., U.S. Dept. of Justice, Washington, D.C., on brief), for respondent.

Before HALL, PHILLIPS, and WILKINSON, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

David E. Trawick, D.D.S. (Petitioner), challenges the Drug Enforcement Agency's (the DEA's) revocation of his DEA Certificate of Registration and the denial of his application for renewal. Petitioner charges that the Administrator lacks the statutory authority to revoke or deny a registration under 21 U.S.C. § 824(a)(4) on the basis of a misdemeanor conviction related to controlled substances but unrelated to the registrant's professional practice or to the registration itself. Petitioner also claims that the Administrator's Order fails to consider the relevant statutory factors and that his findings lack sufficient evidentiary support. We conclude that it was within the Administrator's discretion to revoke petitioner's DEA Registration and to deny his pending application. We also find petitioner's other contentions without merit and therefore affirm.

## I

Petitioner has been licensed to practice dentistry in North Carolina since June 22, 1964, and has practiced in Shelby, North Carolina since 1974. In 1981 or 1982, he began abusing alcohol and shortly thereafter began using cocaine. Petitioner maintains that his drinking and cocaine use was restricted to nights and weekends, and the record contains uncontroverted witness testimony that his habits did not affect his work performance.

In August 1984, the Cleveland County, North Carolina Sheriff's Department began Operation Snowfall, an undercover operation designed to identify and prosecute those involved in the illegal use of controlled substances in Cleveland County. A patient of petitioner's, who was being investigated for growing marijuana, agreed to become a police informant in exchange for the possibility of lenient treatment. The informant supplied petitioner's name in response to a question from police about people who were using, selling or purchasing cocaine. The informant subsequently arranged a meeting between petitioner and an undercover police officer, Special Agent Kenneth Razza. After several meetings, Razza asked petitioner if he could procure some cocaine. Petitioner called a third party who later came to petitioner's house with approximately 3 grams of white powder that appeared to be cocaine. Petitioner and Razza split the powder. Razza later testified that petitioner then inhaled one line of the powder but it did not seem to affect him. He also testified that during this transaction several of petitioner's friends smoked marijuana they obtained from a tray that had been on the coffee table throughout the morning. Razza's share of the white powder was subsequently analyzed and found to be 1.5 grams of

74

cocaine. Although petitioner, Razza and the informant met at petitioner's home one other time, no drugs were exchanged or even seen. Razza testified that he suspected petitioner learned that Razza was an undercover officer and deliberately guarded his behavior.

Several months later, in March 1985, before the filing of any charges against him, petitioner voluntarily entered the Palm Beach Institute, an alcohol and drug treatment center in West Palm Beach, Florida. He left the Institute approximately six weeks later, returning to his practice in Shelby. When he returned, he requested his family physician to administer random urine tests to monitor his freedom from controlled substances. He also joined Alcoholics Anonymous and Narcotics Anonymous, attending meetings three to four times a week. In Narcotics Anonymous, petitioner has held several offices and has participated in counseling adolescents and prisoners.

On May 10, 1985, as part of Operation Snowfall, petitioner was arrested at his office for the November transaction with Razza, the undercover police officer. Although he was indicted on several state felony drug charges, including conspiracy to distribute and distribution of cocaine, he later pleaded guilty only to misdemeanor possession of cocaine as part of a plea agreement in which the state dropped the felony charges. He was fined $2,000 and sentenced to a suspended two-year prison term and a three-year term of supervised probation.

Following petitioner's conviction, the North Carolina Board of Dental Examiners conducted a hearing to determine whether petitioner's conviction also violated the North Carolina Dental Practice Act. Petitioner entered a consent decree in which the Board found that his conviction violated the Act. The Board ordered his licence suspended for 90 days, but immediately stayed the order subject to petitioner's successful completion of a five-year probation.

Petitioner later applied for a renewal of his DEA Registration shortly before it was to expire on June 30, 1986. The DEA issued an Order to Show Cause why the DEA should not revoke petitioner's current registration and deny any pending application for renewal, maintaining that petitioner's prior conviction rendered his registration inconsistent with the public interest per 21 U.S.C. § 823(f) (1988).

Petitioner requested a hearing on the issues raised by the Order to Show Cause. An administrative law judge (ALJ) found that petitioner's registration was inconsistent with the public interest and determined that his registration should be revoked and any pending application denied. The Administrator of the DEA affirmed the decision.

This petition for review followed.

II

We first consider petitioner's primary contention that the Administrator of the DEA lacked the authority to revoke his registration and deny his pending application for renewal. This is an issue of first impression. No court has yet determined whether the 1984 "public interest" amendment to the Controlled Substances Act (CSA), 21 U.S.C. § 824(a)(4), allows revocation of a current DEA registration and denial of a pending renewal application based on a misdemeanor possession conviction that is unrelated to the registrant's practice and to the purported purpose behind the amendment itself.

A

The CSA requires that every practitioner who dispenses or distributes any controlled substances in connection with his practice obtain a certificate of registration from the Attorney General. 21 U.S.C. §§ 822(a), 823(f). The CSA vests authority in the Attorney General to deny, revoke or suspend registrations, 21 U.S.C. § 824, but the Attorney General has delegated this authority to the Administrator of the DEA. 28 C.F.R. § 0.100(b) (1987).

Before 1984, the Administrator could revoke, deny or suspend a DEA registration for three reasons: (1) the falsification of an application; (2) a felony conviction related

to controlled substances; and (3) the suspension, revocation or denial of a state license or registration by an authorized state authority. 21 U.S.C. §§ 824(a)(1)–(3). In 1984, Congress added a fourth reason when it enacted the Dangerous Drug Diversion Control Act (the Act), which specifically targeted the abuse of prescriptive drugs.* The new reason allowed the Administrator to take negative action on a registration when the registrant had engaged in acts which would render a registration inconsistent with the public interest. 21 U.S.C. § 824(a)(4).

In determining whether registration is in the public interest, the Administrator must consider five statutory criteria:

1. The recommendation of the appropriate State licensing board or professional disciplinary authority.

2. The applicant's experience in dispensing, or conducting research with respect to controlled substances.

3. The applicant's conviction record under Federal or State laws relating to the manufacture, distribution, or dispensing of controlled substances.

4. Compliance with applicable State, Federal, or Local laws relating to controlled substances.

5. Such other conduct which may threaten the public health and safety. 21 U.S.C. § 823(f).

### B

■ Where an agency is entrusted with the authority to enforce a statute, its construction of the controlling statute must be upheld if it is sufficiently reasonable; the reviewing court must not substitute its judgment for that of the agency. *E.I. Du Pont de Nemours & Co. v. Train,* 541 F.2d 1018 (4th Cir.1976). Under this narrow scope of review, we conclude that the DEA

Administrator's determination in this case was reasonable.

Revocation, suspension and denial of DEA Registrations have always been permissible under the CSA for felony convictions related to controlled substances. 21 U.S.C. § 824(a)(2). Moreover, DEA Administrators "have consistently held that [an] underlying controlled substance-related felony need not involve the DEA registration to justify revocation or denial of application." *Paul Stepak, M.D.,* 51 Fed.Reg. 17556, 17556–57 (1986). The "public interest" standard was added in 1984 in recognition of the specific weaknesses of the felony conviction criterion that made it difficult to reach the "many violations involving controlled substances which are prescription drugs [but] are not punishable as felonies under State law." S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3448–49. Thus, the criteria of prior convictions for a drug offense was no longer limited to felony convictions. *Id.*

Petitioner acknowledges these aspects of CSA enforcement but argues that Congress never intended the public interest amendment to be extended to situations involving misdemeanor offenses unrelated to the registrant's practice or the purposes of the amendment. The legislative history of the amendment supports petitioner's view of Congress' specific purpose. The amendment arose as part of the Dangerous Drug Diversion Control Act which specifically targeted dispensing practitioners who abused their registrations by diverting legitimate, prescription drugs to illegitimate uses. Moreover, while the amendment was intended to "provide greater flexibility to deny or revoke registrations," Congress obviously intended that the flexibility be exercised in the most "egregious" cases, where the practitioner's registration is clearly contrary to the public interest. For exam-

---

* Legislative history clarifies the intent of the Act. Evidence suggests that prescription drugs diverted by legitimate medical distributors to the illicit drug market accounts for about three-fourths of the deaths and injuries due to drug abuse.

[T]o correct this type of activity the bill amends the Controlled Substances Act to make it easier for the [DEA] to suspend or revoke the authority of physicians ... who write or dispense prescriptions in a way that is threatening to the public health or safety. 130 Cong.Rec. H9681 (daily ed. Sept. 18, 1984) (remarks of Rep. Gilman).

ple, Representative Rangel illustrated the anticipated case type:

> [S]ome unscrupulous doctors in New York City were prescribing potent narcotics for addicts who would then use the drugs or resell them to obtain money to buy heroin. Enactment of the public interest standard ... would enable the [DEA] to revoke the registration of those physicians who engage in that type of medical practice.

130 Cong.Rec. H9682 (daily ed. Sept. 18, 1984) (remarks of Rep. Rangel).

■ Petitioner, however, cannot "avoid the plain statutory language [of the amendment] merely by showing that Congress, in enacting [it] was largely concerned with a situation different from the instant case." *United States v. Lee*, 726 F.2d 128, 131 (4th Cir.1984); *see also Forfeiture Hearing as to Caplin & Drysdale, Chartered*, 837 F.2d 637, 642 (4th Cir.1988) ("Congressional disapproval of a specific type of conduct cannot ... legitimately be used to restrict statutory language that is unambiguously more broad."). The public interest amendment provides that a registration to distribute or dispense a controlled substance may be revoked upon a finding that the registrant "has committed such acts as would render his registration ... inconsistent with the public interest...." 21 U.S.C. § 824(a)(4). It is clearly reasonable to interpret this unambiguous language as allowing negative action on a DEA registration based on a misdemeanor possession conviction that is unrelated to the registrant's practice or the diversion concerns of the amendment itself.

### III

Petitioner also challenges the Administrator's actions on the grounds that his Order was not based on the statutory factors that the Administrator "shall consider" under 21 U.S.C. § 823(f) in determining whether a registration is in the public interest. Petitioner charges that the Order is based almost exclusively on only one arguably relevant factor—petitioner's misdemeanor conviction—and on the Administrator's belief that petitioner "has not fully

admitted to his criminal involvement and drug abuse problems," which caused the Administrator to have "grave reservations about [petitioner's] rehabilitation."

■ As a reviewing court, we must accord proper deference to the DEA's expertise but must nonetheless make a "searching and careful inquiry" of the record to determine whether the agency's decision was based on a consideration of the relevant factors and whether there was a clear error of judgment. *Duke Power Co. v. United States Nuclear Reg. Comm'n*, 770 F.2d 386, 390 (4th Cir.1985). When any application for registration is denied, the Administrator is obligated to include in his Order the findings of fact and conclusions of law upon which the Order was based. 21 C.F.R. § 1301.57.

As petitioner contends, the Administrator's Order focuses on petitioner's misdemeanor conviction and his state of rehabilitation. The Administrator, however, adopted the findings of fact and conclusions of law recommended by the ALJ. He also laid out the five statutory factors to be considered, noting that he was not required to make findings with respect to all of the factors. He reasoned that he had broad discretion to weigh the factors depending on the circumstances of the case.

■ While the Order does not discuss each of the relevant factors in the factual context, it survives our "searching and careful inquiry." An administrator's obligation to explain the rationale for his decision may be satisfied even if he gives only minimal consideration to the relevant factors, *see, e.g., Houston v. FAA*, 679 F.2d 1184, 1190 (5th Cir.1982), or if the basis of his decision can only be deduced from the Order. *Deaton, Inc. v. ICC*, 693 F.2d 128, 131 (11th Cir.1982). Remand for more careful consideration of the relevant factors is generally proper only when it is unclear whether the Administrator actually considered the relevant factors at all. *See PAK Transport, Inc. v. United States*, 613 F.2d 351, 354 (1st Cir.1980).

We think the Administrator met his obligation here. It is clear that he was aware

of the relevant factors; he listed them in the Order. Moreover, he created a sufficient basis for the Order when he specifically adopted the ALJ's findings of fact and conclusions of law. *See River Forest Pharmacy, Inc. v. DEA*, 501 F.2d 1202, 1205–06 (7th Cir.1974) (weak basis substantiated by Administrator's reference to government's proposed findings of fact and conclusions of law).

The Administrator's failure to discuss independently the relevant factors in this case is problematic, however. As petitioner correctly points out, the ALJ erroneously determined that two of the five statutory factors weigh heavily against petitioner: factor three, relating to a conviction record for manufacturing, distributing or dispensing controlled substances, and factor four, concerning compliance with controlled substances law. Petitioner's misdemeanor conviction for possession cannot support the ALJ's conclusion on factor three. It does not necessarily follow, however, that the agency action need be overturned here. After reviewing the Order and the ALJ's recommendations, we are convinced that they present a sufficient rational basis for the DEA's action. The action therefore is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U.S.C. § 706(2)(A); *see also United States Army Engineer Center v. FLRA*, 762 F.2d 409, 414 (4th Cir.1985).

### IV

Petitioner's final challenge concerns the Administrator's conclusion that petitioner has not fully admitted his drug abuse problem. Petitioner contends that this conclusion has no rational basis in fact and was accorded too much weight in the Administrator's decision. To be valid, the Administrator's findings of fact must be supported by substantial evidence in the record as a whole. *See American Textile Mfr. Inst., Inc. v. Donovan*, 452 U.S. 490, 522–23, 101 S.Ct. 2478, 2497, 69 L.Ed.2d 185 (1981) (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion). While substantial evidence is "more than a mere scintilla," *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938), it is "something less than the weight of the evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

The record contains sufficient evidence to support the Administrator's conclusion. While petitioner testified that he used cocaine only "on rare occasions," reliable government witnesses testified that petitioner was much more heavily involved in drug use. Moreover, while petitioner claimed to be rehabilitated, he produced very little evidence to corroborate his testimony. Even though a different finder of fact may have determined that the evidence revealed that petitioner is rehabilitated, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo*, 383 U.S. at 620, 86 S.Ct. at 1026. It obviously remains open to petitioner to attempt proof of rehabilitation in later petitions.

Finally, petitioner's contention that the Administrator accorded too much weight to his finding of non-rehabilitation is without merit. As noted above, the Administrator's decision is adequately based on the relevant factors.

AFFIRMED.