Daniel O'DONNELL and
Mary O'Donnell, his
wife, Appellant,

v.

BIG YANK, INC. and K–Mart Corporation, Clover and McGregor
Corporation, Appellee.

Daniel O'DONNELL and Mary
O'Donnell, Appellant,

v.

BIG YANK, INC. and Clover,
Inc. Appellee.

Superior Court of Pennsylvania.

Argued Jan. 14, 1997.

Filed June 18, 1997.

Reargument Denied Aug. 8, 1997.

---

Thomas J. Mettee, Philadelphia, for appellants.

W. Matthew Reber, Philadelphia, for appellees.

Before DEL SOLE, POPOVICH and OLSZEWSKI, JJ.

DEL SOLE, Judge.

Following a ruling on two Motions in Limine which precluded a finding of liability against Appellees, the trial court entered an order of Summary Judgment in their favor and against Appellants. The conclusion that an award of Summary Judgment was warranted came after the court ruled that the "spoliation" doctrine applied in this matter and that Appellants' claims were pre-empted by federal legislation. Because we have determined that both these conclusions were reached in error, we reverse the award of Summary Judgment and remand this matter for trial.

Appellants, Mr. and Mrs. O'Donnell, brought this action against Appellees claiming that Mr. O'Donnell sustained injuries while employed as a cable splicer.[1] They claim that he made contact with electrical voltage which arced from an underground substation. Appellants maintain that Mr. O'Donnell's garments ignited, quickly melted upon exposure to flame and produced a hot tarry substance which caused or substantially enhanced his burn injuries. Appellants assert that Mrs. O'Donnell purchased these work clothes for her husband at Appellee, K-Mart's store, and that Appellee, Big Yank

---

1. Mrs. O'Donnell made a derivative claim for loss of consortium.

Inc., manufactured or otherwise distributed through its vendors the pants worn by Mr. O'Donnell. Appellants allege the pants were defective when sold.

Appellees filed Motions in Limine based upon the undisputed fact that Appellants had discarded the pants Mr. O'Donnell was wearing at the time of the accident and were unable to produce them for inspection. Appellee also sought relief based upon a federal pre-emption theory since the trousers in question admittedly met federal standards for flammability. The trial court accepted both arguments. It concluded that because Appellants were unable to produce the pants, Appellee, Big Yank, was unable to challenge whether it was the manufacturer of the garment. Further, the court ruled that the absence of the trousers prevented Appellees from pursuing the defense that grease on the pants, rather than their fiber, caused the fire. With regard to the pre-emption argument, the trial court ruled that Appellants could not claim that the design of the pants was defective, since it admittedly met federal safety standards. Accordingly, the court granted the Motions in Limine and entered Summary Judgment against Appellants. This appeal followed.

We first address the "spoliation" argument prompted by the fact that the pants worn by Mr. O'Donnell at the time of the accident were discarded by Appellants. The trial court cited *Roselli v. General Elec. Co.,* 410 Pa.Super. 223, 228, 599 A.2d 685, 687 (1991), as setting forth the policy behind this rule. However to properly interpret the holding of *Roselli,* we must examine the particular facts of that case to understand the decision.

In *Roselli,* the plaintiff alleged she suffered personal injuries when a glass carafe from a coffee maker shattered in her hand, spraying coffee onto her body causing severe burns. She brought an action against General Electric, as manufacturer of the coffee maker, claiming that there existed a defect in *this particular* carafe which caused it to shatter. The defense offered an expert report which indicated that the base of the machine was scorched and scarred which indicated frequent use. When it was established that the remnants of the glass carafe were discarded and unavailable for inspection by the defense, the trial court awarded the defendant summary judgment. The trial court noted that the plaintiff did not claim this defect occurred in all General Electric coffee makers, and that under such circumstances the entry of summary judgment was warranted. The award was affirmed on appeal with this court commenting that the plaintiff was unable to prove that a malfunction occurred in the absence of abnormal use or reasonable secondary causes. *Id.* at 230, 599 A.2d at 688. We held that the plaintiff failed to eliminate the realistic possibility that the carafe broke because of its use and handling prior to the date of the incident. *Id.* at 230, 599 A.2d at 689. Thus, we concluded the plaintiff failed to meet her burden of proof and the award of summary judgment was affirmed.

The trial court in this case cites *Roselli* for the untenable proposition that whenever a key piece of evidence is discarded, preventing the defendant from undertaking its own independent examination of the product, the spoliation doctrine applies and no evidence concerning the product can be presented by the plaintiff. However the facts of *Roselli* do not call for such a broad conclusion. In *Roselli* the summary judgment was based upon the uncontested facts that the product had been used repeatedly and that the event which was claimed to have occurred with this one specific carafe could have occurred absent a manufacturer defect. The plaintiff, who was unable to produce the product, could not offer evidence in support of her claim of defect. *Roselli* does not hold that in all cases where evidence has been lost or destroyed prior to suit or inspection, a plaintiff cannot pursue its claim. Rather, traditional concepts of burden of proof remain. In *Roselli* the award of summary judgment was warranted because the plaintiff failed to present evidence which, if believed, would allow her to meet her burden of proving a defect since the carafe could shatter for reasons unrelated to a defect. However, in cases where the plaintiff is able to establish a defect even if the specific product is lost or destroyed, the case must be allowed to pro-

ceed. Such is the situation presented before us.

■ This case involves a pair of pants worn by the injured party who alleged the garment was constructed of highly flammable material, which was easily ignitable and which melted into a hot tar-like substance. Unlike *Roselli* an examination of the specific product is not necessary to determine the validity of the claim because the injured party in this case is not claiming a defect particular to this item, but rather that the defect occurs in all like products manufactured and sold by the defendants.

This distinction was recognized by the United States District Court in *Quaile v. Carol Cable Co. Inc.*, 1993 WL 53563 (E.D. Pa. Feb. 26, 1993). There the court refused a request for summary judgment in an instance where the plaintiff had discarded an allegedly defective lamp. The court concluded that because the plaintiff claimed that all lamps made by the defendant contained the same design defect, the defendant was able to examine its other lamps, and was not prejudiced by the absence of the particular lamp. In reaching its conclusion the court relied upon the decision in *Lee v. Boyle–Midway Household Products, Inc.*, 792 F.Supp. 1001 (W.D.Pa.1992) which distinguished its facts from those found in *Roselli, supra.* In reference to *Lee,* the *Quaile* court stated:

> More recently in *Lee v. Boyle–Midway Household Products, Inc.* the district court in applying Pennsylvania law, noted that where a plaintiff alleges a defect in all of the defendant's products as opposed to simply alleging a defect in the particular product causing the injury, the case may be distinguished from the holding in *Roselli v. General Electric* which bars recovery on a defect theory where the product has been destroyed. The district court stated:
>
> > Plaintiff's case here could conceivably be distinguished from *Roselli* and *Martin* [*Martin v. Volkswagen of America, Inc.*, 1989 WL 81296 (E.Pa. July 13, 1989)] because the plaintiffs in those cases did not allege a defect present in all of defendants' like products. In this case plaintiff is, at least in part, apparently

alleging that Boyle–Midway's Lewis Red Devil Lye Drain Cleaner was unsafe for consumer use—a defect which would presumably be present in all cans of it.

*Quaile v.Carol Cable Co., Inc.* at *3, citing *Lee v. Boyle–Midway Household Products, Inc.*, 792 F.Supp. at 1006, n. 4.

Thus, in the instant matter, Appellants can seek to prove their case with the introduction of like products manufactured or sold by the defendant, and the defendant can offer evidence that its product will not react in a harmful manner when exposed to circumstances like those presented when the accident occurred. Similarly at trial the defense can offer evidence regarding the flammability of its product in a variety of situations, including any differences which may occur because of repeated use or washing of the pants or because of any substances which may have soiled the clothing Mr. O'Donnell was wearing at the time of the accident. These are all matters which are more appropriately left for the jury to review.

■ Likewise we must reject the trial court's reasoning which disallowed introduction of evidence regarding the pants because Appellee, Big Yank, Inc., was precluded from establishing that it was the manufacturer of this product. The trial court cited *DeWeese v. Anchor Hocking*, 427 Pa.Super. 47, 628 A.2d 421 (1993), in support of a conclusion that, even in a design defect case, the product is necessary because the plaintiff is unable to prove a prima facie case absent proof of the identity of the seller or the manufacturer. In *DeWeese* an award of Summary Judgment was affirmed because the plaintiff was unable to produce a glass carafe which exploded when he was working as a busboy at a country club. The court ruled that the plaintiff's failure to preserve the pitcher was "fatal" because there was "no evidence tending to establish that the pitcher involved was manufactured or sold by either defendant." *Id.* at 51, 628 A.2d at 423. The instant case is markedly different.

In the present case Appellants were prepared to offer evidence that the pants in question were manufactured by Big Yank and sold by K–Mart. Included in the record

is a deposition of Mrs. O'Donnell, who bought the work clothing for her husband. She testified that she purchased her husband's pants at K–Mart about a month before the accident, and on that occasion she purchased three or four sets of pants and shirts.[2] All of the pants were the same except for color, and the remaining unworn work clothing was turned over by Mrs. O'Donnell to her counsel. She testified that these items presented to her attorney were "exactly the same make of the ones he [Mr. O'Donnell] wore that night." Deposition of Mrs. O'Donnell at 9/14/93 at 53.

Thus, unlike the situation in *DeWeese*, here the plaintiffs produced evidence of the identity of the manufacturer and the seller. Even the trial court noted "there might be enough evidence for the trier of fact to conclude that the clothing was probably made by Big Yank." (Trial court opinion at 4.) Because there was evidence offered identifying Appellees as the manufacturer and seller of the pants, it was inappropriate for the court to enter summary judgment. At trial Appellees can offer a defense which seeks to prove that Mrs. O'Donnell has misidentified them as responsible parties. They can question Mrs. O'Donnell, as they did during her deposition, about whether she retained any store receipts, any tags from the clothing or how specifically she or her husband can describe the clothing he was wearing at the time of the accident. This evidence can all be presented before a jury, which can accept or reject it. Appellants cannot, however, be deprived of the opportunity to present their case before a jury under these circumstances.

We turn now to address the trial court's remaining ruling which found that there is federal pre-emption of Appellants' cause of action, since the trousers in question admittedly meet the federal standards for flammability, known as Commercial Standard ("CS) 191–53. 16 C.F.R. part 1610. The court found Appellants claims expressly pre-empted by Section 1203 of the Federal Flammable Fabrics Act, 15 U.S.C. § 1191 *et seq.* (FFA).

The FFA, which establishes nationwide flammability standards for fabrics, includes a pre-emption provision in § 1203, which states:

> Except as provided in subsections (b) and (c) of this section, whenever a flammability standard or other regulation for a fabric, related material, or product is in effect under this chapter, no State or political subdivision of a State may establish or continue in effect a flammability standard or other regulation for such fabric, related material, or product if the standard or other regulation is designed to protect against the same risk of occurrence of fire with respect to which the standard or other regulation under this chapter is in effect unless the State or political subdivision standard or other regulation is identical to the Federal standard or other regulation.

At issue is whether Appellants' common-law claims are preempted by this provision. While § 1203(a) does not specifically mention the pre-emption of common law causes of action, whether such claims may be preempted absent an explicit statement has been a question considered by other courts when reviewing the pre-emption provisions of other federal statutes. This court had occasion to do so when it considered *en banc* whether a products liability claim, that a car was defectively designed because it lacked air bags, was expressly or impliedly preempted by the National Traffic and Motor Safety Vehicle Act, 15 U.S.C. §§ 1381 *et seq. Cellucci v. General Motors Corp.*, 450 Pa.Super. 438, 676 A.2d 253 (1996) *allocatur granted*, 546 Pa. 652, 684 A.2d 555 (1996). The Safety Act includes a pre-emption clause in § 1392 which provides that no State shall have authority to establish any safety standard which is not identical to the Federal standard. The Act also includes a "savings clause" in section 1397(k) which provides that compliance with the safety standards does not exempt one from common-law liability. When considering the pre-emptive effect of these provisions on a common law tort action, the court noted that an award of damages

**2.** Certainly, the testimony of Mrs. O'Donnell that she purchased the pants at K–Mart is sufficient to conclude it was a seller for 402A purposes.

can have the same regulatory effect as an affirmative legislative enactment. *Id.* at 446–48, 676 A.2d at 258. The court in *Cellucci* cited to the United States Supreme Court's decision in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

In *Cipollone,* the Court was examining the provisions of the Public Health Cigarette Smoking Act of 1969 and considering whether an action claiming that manufacturers had failed to adequately warn smokers about the health consequences of smoking was pre-empted. The Act included a provision which limited states from imposing any "requirement or prohibition" with respect to the advertising or promotion of cigarettes which have been labeled in conformity with the Act. 15 U.S.C. § 1334(b)(§ 5(b)). The Court concluded that the terms "requirement or prohibition" included common-law actions for damages, thus pre-empting certain actions.

Our court in *Cellucci* looked to this language in examining the Safety Act's pre-emptive clause, which prohibits states from establishing or continuing in effect "safety standards" which are not identical to federal standards. 15 U.S.C. § 1392(d). The court ruled that the inclusion of this language alone would expressly pre-empt the common law claim, but the inclusion of the "savings clause" created ambiguity and required the court to consider whether there was an implied pre-emption. *Id.* at 448–50, 676 A.2d at 259.

The decision in *Cellucci,* which relied upon the United States Supreme Court's decision in *Cipollone,* was rendered prior to the Supreme Court's latest ruling in *Medtronic, Inc. v. Lohr,* —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). In *Medtronic* the Supreme Court again considered the matter of pre-emption. A recipient of a pacemaker, which had been approved as a device substantially similar to devices already on the market under the Medical Device Amendments (MDA), brought an action in state court against the manufacturer claiming negligence and strict liability. The court concluded that the negligence and strict liability claims were not pre-empted by 21 U.S.C § 360k which does not permit a state or political subdivision to establish requirements, with respect to a device intended for human use, which are different from or in addition to any requirement applicable to the device under the subchapter. The Court ruled that it need not go beyond the language of the pre-emptive provision since its provisions expressly pre-empt state law. Yet to determine the scope of the pre-emption and to interpret its language, the court looked to certain presumptions. In noted that Congress does not cavalierly pre-empt state-law causes of action and that the historic police powers of the States are not to be superseded absent clear and manifest expression of purpose by Congress. *Id.* at ——, 116 S.Ct. at 2250. The court also remarked that an understanding of congressional purpose is essential to determine the scope of pre-emption. *Id.*

The Court concluded that state requirements must, under the terms of the pre-emption provision, be "with respect to" medical devices and "different from or in addition to" federal requirements. The majority held that the design claim was not pre-empted, however, a variety of views were expressed regarding the particular reasons for this ruling. *See Green v. Dolsky,* 546 Pa. 400, 685 A.2d 110 (1996). Mr. Justice Stevens joined by Justices Kennedy, Souter and Ginsburg in part IV of the Opinion rejected Medtronic's argument that any common-law cause of action is a "requirement" under § 360k(a). The Court in Part IV of the Opinion concluded that the use of the word "requirement" would be an "odd" choice if Congress had intended to preclude all common-law causes of action. *Id.* at ——, 116 S.Ct. at 2251. The use of the word "requirement" in the *Cipollone* case was distinguished noting that the *Cipollone* case allowed for the petitioner to maintain some common-law actions and therefore it did not have the large pre-emptive effect as would a similar result in the case presented before the Court. *Id.* at ——, 116 S.Ct. at 2252. It was noted that because there is no explicit private cause of action set forth in the MDS, most if not all relief for persons injured by defective medical devices would be barred if pre-emption of

common-law claims were read into the statute.

Madame Justice O'Connor, joined by the Chief Justice, and Justices Scalia and Thomas concurred in part and dissented in part. While deciding that the term "requirement" encompasses state common-law causes of action, they agreed that the defective design claim in this case should not be pre-empted because the particular device at issue did not have imposed on it any "requirements" under the MDA. Since it was substantially equivalent to devices which were already on the market, there were no specific "requirements" placed on this device and therefore a defective design claim should not be pre-empted. Madame Justice O'Connor disagreed with the Majority's conclusion that manufacturing and labeling claims survive pre-emption. Because they would compel Medtronic to comply with requirements different from or in addition to those already required, it was concluded that these claims should be pre-empted.

Mr. Justice Breyer concluded in a Concurring Opinion that while the MDA may pre-empt some state law tort suits it did not pre-empt the claims at issue. In considering pre-emption with regard to the claims presented, Justice Breyer concluded it was necessary to look to congressional intent. He remarked on the fact that the regulation speaks to "specific requirement applicable to a particular device" and noted that there are not any specific requirements in place concerning this device. He concluded that because there is no actual conflict present in *Medtronic*, there is no pre-emption.

■ In applying the principles of these cases to the present action we must begin with the specific language applicable to this case. The provision at issue disallows the establishment of a flammability "standard or other regulation" if it is designed to protect against the same risk of fire with respect to which there is a "flammability standard or other regulation" already in effect. The word "standard" was included in the pre-emptory language of the Safety Act in *Cellucci, supra*. Therein this court was considering the use of a phrase which referred to "any safety standard" which is not identical to the Federal standard. In *Cipollone, supra*, the critical language concerned a directive that "no requirement or prohibition" be imposed. The word "requirement" was also included in the statutory provision at issue in *Medtronic, supra*. Significantly, none of these cases consider the use of the phrase at issue here, a "standard or other regulation."

These previous rulings, however, direct us when considering a statutory provision which expressly pre-empts state law, to look to the precise text to determine the extent to which pre-emption will apply. In this case, we note that the term "standard" alone was not used, but rather the phrase "standard or other regulation" was employed. While the word "standard" has been held to include common-law actions, *Cellucci, supra*, the phrase "standard or other regulation" appears to refer to a statute or other regulation, not a common law damage action. The use of the word "other" indicates that the term "standard" is meant to be a "type" of regulation. This interpretation is reinforced by the language of the section which directs that "no State or political subdivision of a State" may establish a flammability standard or other regulation if it is designed to protect against the same risk covered by a federal standard or regulation. The use of the terms "State or a political subdivision of a State" can not be said to include the pronouncements of a jury or judge in a tort case. Rather, it refers to the positive enactments of legislative and/or regulatory state bodies.

This same conclusion was reached by the United States Court of Appeals for the First Circuit in *Wilson v. Bradlees*, 96 F.3d 552 (1996). In considering the pre-emptive effect of the FFA on common law tort claims, the court remarked:

> To start with statutory language, the phrase 'standard or other regulation' does suggest that Congress was speaking of positive law. The term 'standard' could be used to refer either to a statute or a common-law decision, but 'regulation' is a term peculiar to positive law; and to refer to 'standard or other regulation' arguably implies that Congress was addressing those standards that are contained in stat-

utes or administrative directives. The further reference to 'State or political subdivision' may slightly reinforce the inference that Congress was referring to something adopted by a state legislature or local entity.

*Id.* 96 F.3d at 553.

In ascertaining the purpose of Congress with regard to the pre-emptive effect of the FFA, we have examined the legislative history which led to the creation of the pre-emption provision of Section 1203. There is nothing in the legislative history which indicates that there was a discussion on the effect of pre-emption of common law damage claims. However the agency charged with administering the FFA, the Consumer Product Safety Commission, has stated that it:

does not believe that 'standards' applied by courts should be included in the definition of 'State or local requirement.' Generally, courts do not establish prospective standards or regulations applicable to a category of person, but instead deal with the specific parties before them. It is the Commission's view that the statutory pre-emption provisions were intended to address the legislative type of standard or regulation.

56 Fed.Reg. 3414, 3415 (Jan. 30, 1991).

The Consumer Product Safety Commission, (CPSC), is responsible for implementation and enforcement of the FFA, and for conducting research and tests regarding the flammability of products. With the exception of new standards for children's nightwear (see 16 C.F.R. Part 1615), the CPSC has not replaced or revised the standard adopted in the FFA of 1953, known as CS 191–53. These facts were considered critical by the court in *Wilson* when judging "how Congress would have decided the issue if Congress had squarely confronted it." *Id.* at 556. The court stated:

By this test of reasonableness, a decision in favor of [the plaintiff] is far easier to defend at the present stage of federal regulation. The current flammability standard is not one adopted by the federal agency after a searching inquiry into what best serves the public interest. It is an industry devised standard that has been perpetuated by CPSC inaction in the teeth of some indications that the standard is not adequate.

*Id.*

The court thereafter noted that the present standard contrasts sharply with other regulatory directives in other instances, such as the Medical Devices Amendments, at issue in *Medtronic.* Because there is no indication that the flammability standard was designed to be a proper standard for the future, in that it was not adopted after an an extensive administrative inquiry and agency decision, the court concluded common-law claims should not be pre-empted. The court wrote:

Industry standards serves many useful purposes, but we do not think that congress, if squarely asked to address the issue, would say that such a standard should extinguish a common-law claim of design defect. If the defendants want to show that they met a prevailing industry standard, fine; but this should not preclude a plaintiff from showing that industry should have done more under certain conditions. Federal regulation may be a substitute for common-law liability; industry self-regulation is not.

*Id.*

 In conclusion we find the reasoning of *Wilson* persuasive, and in view of the precise wording of Section 1203(a) and its contrast with other provisions considered by the courts, we conclude that Appellants' claims are not pre-empted.[3] We find that Congress chose to pre-empt state legislative and administrative safety standards that are differ-

---

3. We note that even had we ruled otherwise, the specific claims made by Appellants which concern a failure to warn, would not be pre-empted. It has not been claimed that the CPSC has regulated the warnings on fabrics or clothes. Section 1203(a) prohibits the establishment of standards or regulations which are "designed to protect against the same risk of occurrence of fire." The flammability standard of CS 191–53 relates to the risk of quick ignition and burning. However, a warning pertains to the use of a particular garment for a particular purpose. Absent federal regulation related to warnings, Appellant's failure to warn claim clearly survives a pre-emption analysis.

ent than the federal standard, however, common-law claims have been left intact and have specifically not been pre-empted by the inclusion of the pre-emptive provision of § 1203(a). We make this ruling mindful of presumptions we are to be guided by; that Congress does not cavalierly pre-empt state-law causes of action, and that absent a clear and manifest expression of the purpose of Congress we are not to assume pre-emption. *Medtronic, supra,* at ——, 116 S.Ct. at 2250. For the foregoing reasons, we reverse the trial court's award of summary judgment and remand this matter to trial.