628 A.2d 421

James C. DeWEESE, Appellant,

v.

ANCHOR HOCKING CONSUMER AND INDUSTRIAL
PRODUCTS GROUP and Lewis Brothers and
Sons, Inc., Appellees.

Superior Court of Pennsylvania.

Argued May 12, 1993.

Filed July 8, 1993.

48

John D. Newborg, Pittsburgh, for Anchor Hocking, appellee.

Stephanie G. Spaulding, Pittsburgh, for Lewis Bros., appellee.

Before McEWEN, OLSZEWSKI and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order granting summary judgment in favor of defendants below [hereinafter "Anchor Hocking" and "Lewis Brothers"]. Appellant [hereinafter "DeWeese"] was injured when a glass carafe exploded while he was filling it with hot water. The Honorable Livingstone Johnson granted summary judgment because DeWeese was unable to produce the carafe to defendants for inspection during discovery. We affirm.

DeWeese was employed by Highland Country Club [hereinafter "the club"] as a busboy and waiter. On December 1, 1985, DeWeese was responsible to set up a buffet line in preparation for the club's Sunday morning brunch. As part of this duty, he filled numerous chafing dishes with hot water. DeWeese procured one of the glass pitchers which the club had in its store room and placed it under a coffee urn's hot water spout, as was his customary practice. As the water filled the pitcher, it exploded and injured DeWeese's hand. DeWeese was not holding the pitcher, but was standing in its immediate vicinity when the accident occurred. Although no one apparently witnessed the explosion, several employees rushed to DeWeese's aid and summoned an ambulance. DeWeese was transported to the hospital and the club employees cleaned the area of the accident, discarding the remnants of the shattered pitcher.

DeWeese filed a complaint against Anchor Hocking and Lewis Brothers alleging, among other things, that the two companies were strictly liable as manufacturer and seller of the defective pitcher. Following discovery, Anchor Hocking and Lewis Brothers filed motions for summary judgment. Both parties contended that DeWeese's failure to preserve the pitcher's glass fragments effectively precluded them from defending against DeWeese's contention that he was injured as a result of a defect in a pitcher manufactured by Anchor Hocking and sold by Lewis Brothers, relying on *Roselli v. General Electric Co.*, 410 Pa.Super. 223, 599 A.2d 685 (1991),

*appeal discontinued* (1993). Judge Johnson granted both motions and DeWeese filed this timely appeal.[1]

 Summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b), 42 Pa.C.S.A. When considering a motion for summary judgment, the trial court must examine the record in the light most favorable to the non-moving party, accept as true all well-pleaded facts in the non-moving party's pleadings, and give him the benefit of all reasonable inferences drawn therefrom. *Dibble v. Security of America Life Ins.*, 404 Pa.Super. 205, 590 A.2d 352 (1991); *Lower Lake Dock Co. v. Messinger Bearing Corp.*, 395 Pa.Super. 456, 577 A.2d 631 (1990). Summary judgment should be granted only in cases that are free and clear of doubt. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). We will overturn a trial court's entry of summary judgment only if we find an error of law or clear abuse of discretion. *Lower Lake Dock Co., supra.*

The only issue raised on appeal is whether Anchor Hocking and Lewis Brothers were precluded from preparing a defense as a result of DeWeese's failure to preserve the pitcher fragments. This Court has held that where a plaintiff brings an action claiming that he suffered injury as a result of a defective product, his failure to produce the product for inspection by the defense will render summary judgment against him appropriate. *Roselli, supra*, 410 Pa.Super. at 228, 599 A.2d at 687–688. We held that allowing a cause of action to continue without the allegedly defective product is contrary to public policy:

1. In his order directing immediate transmittal of the record to Superior Court, Judge Johnson indicated that he would file an opinion pursuant to Pa.R.A.P., Rule 1925, 42 Pa.C.S.A., "at a later date." As of the date of filing in this case, we have not received Judge Johnson's opinion. Since the parties' summary judgment motions (and their briefs to this Court) so clearly rely on *Roselli*, however, we have a clear picture of the issues involved and find a remand for an opinion unnecessary.

To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear.

*Id.* (quoting *Martin and Greenspan v. Volkswagen of America*, No. 88–8261, 1989 WL 81296 (E.D.Pa., July 13, 1989) (unpublished)). In *Roselli*, we granted summary judgment in favor of a manufacturer of a coffee maker after plaintiff discarded the coffee pot which shattered in her hand.

■ DeWeese claims that *Roselli* is distinguishable from this case. He points to Anchor Hocking's answers to interrogatories, in which Anchor Hocking admits that the type of pitcher which is allegedly involved in this case is not designed to withstand liquids which are at or near the boiling point. *See,* Reproduced record at 22–31. Thus, DeWeese contends, Anchor Hocking is not prejudiced in preparing a defense because an inspection of the discarded pitcher would serve no useful purpose. While we find this argument persuasive, we are constrained to affirm. DeWeese's failure to preserve the pitcher is fatal in a much more fundamental respect—without the pitcher, there is simply no evidence tending to establish that the pitcher involved in this case was manufactured by Anchor Hocking or sold by Lewis Brothers.

■ In order to establish a successful cause of action in products liability, a plaintiff must prove that a defect in a product proximately caused injury to him or her, which defect existed at the time the product left defendant's control. *Roselli, supra,* at 410 Pa.Super. 228–229, 599 A.2d 685; *Dauphin Deposit Bank and Trust Co. v. Toyota Motor Corp.,* 408 Pa.Super. 256, 596 A.2d 845 (1991). A plaintiff must also

establish that the injuries were caused by a product of a particular manufacturer. *Berkebile v. Brantly Helicopter,* 462 Pa. 83, 337 A.2d 893 (1975). "Summary judgment is proper when the plaintiff has failed to establish that the defendant's products were the cause of plaintiff's injury." *Eckenrod v. GAF Corp.,* 375 Pa.Super. 187, 191, 544 A.2d 50, 52 (1988), *alloc. denied,* 520 Pa. 605, 553 A.2d 968 (1989).

Here, DeWeese testified that he could not recall the type of pitcher he used to fill the chafing dishes on the day of the accident. When asked how many pitchers were kept in the club's storage area, DeWeese testified that there were more than a dozen. DeWeese's deposition, at 23. He further testified:

Q: Were the pitchers all the same? Did they look the same or were there differences?

A: There were differences.

Q: Can you recall how many types of pitchers there were?

A: At a minimum, three.

Q: Would you have any way of knowing if you had actually used this particular pitcher before?

A: No, sir.

*Id.* DeWeese acknowledged that he did not choose a particular type of pitcher to fill the chafing dishes, *Id.* at 27, and that he did not know who manufactured the pitcher he used. *Id.* at 40.

Robert Duhon, the general manager of the club, testified that although the club purchased Anchor Hocking pitchers from Lewis Brothers, he had no personal knowledge of the type of pitcher DeWeese used. Duhon's deposition, at 36–37. In fact, the only evidence in the record which indicates that Deweese used an Anchor Hocking pitcher is in a letter written by Jane Doerfler, the club's office manager at the time of DeWeese's accident. Reproduced record, at 232–239. Ms. Doerfler concludes, in response to an investigatory letter sent by DeWeese's counsel inquiring as to the manufacturer of the pitcher, that Anchor Hocking manufactured and Lewis Brothers sold the pitcher. After reviewing the letter, however,

which predates DeWeese's complaint, it becomes evident that it was used to form the basis for the factual allegations in his complaint.

 It is well-settled that a party may not defeat a motion for summary judgment by relying on the allegations of his complaint. Rather, he must present depositions, affidavits, or other acceptable documents that show there is a factual issue for a jury's consideration. *Brecher v. Cutler,* 396 Pa.Super. 211, 578 A.2d 481 (1990). Ms. Doerfler's conclusions have not been presented by affidavit, deposition, or part of any verified discovery. We cannot consider her statement, which was procured in an effort to establish factual allegations for DeWeese's complaint, as raising a factual issue regarding the identity of the pitcher which caused DeWeese's injury.[2]

The only conclusion one can draw, when viewing the depositions and answers to interrogatories submitted in this case most favorably to DeWeese, is that the club purchased several Anchor Hocking pitchers from Lewis Brothers. There is no testimony or reliable document, however, which tends to establish that DeWeese was injured by one of those pitchers on December 1, 1985. Thus, even though DeWeese argues persuasively that *Roselli* should be limited to cases where the allegedly defective component is unique to the discarded product,[3] his failure to preserve the shattered pitcher has preclud-

**2.** Even if we could properly consider this letter, it is apparent that Ms. Doerfler's conclusion is based not on personal knowledge, but on an invoice which shows that the club purchased six Anchor Hocking pitchers from Lewis Brothers in 1984. Thus, the letter establishes nothing more than what we conclude below; the club purchased several Anchor Hocking pitchers. There is simply no testimony in this record which would raise a factual issue regarding DeWeese's assertion that he was injured by one of Anchor Hocking's pitchers.

**3.** The United States District Court has interpreted *Roselli* in this manner. In *Lee v. Boyle–Midway Household Products,* 792 F.Supp. 1001, 1005 (W.D.Pa.1992) (citing *Roselli* ), the district court wrote: "Under Pennsylvania law, in a case in which plaintiff does not allege a defect present in all of defendant's products, a defendant in a products liability case is entitled to summary judgment when loss or destruction of evidence deprives the defense of the most direct means of countering plaintiff's allegations." We do not read *Roselli's* holding as being limited to cases where a plaintiff's complaint alleges a defect not

ed him from raising a genuine issue of material fact regarding the identity of its manufacturer and seller. Summary judgment was properly awarded on this basis in favor of Anchor Hocking and Lewis Brothers.

Order affirmed.

McEWEN, J., concurs in the result.

Concurring statement by FORD ELLIOTT, J.

FORD ELLIOTT, Judge, concurring:

I join in the majority's decision to affirm the order granting summary judgment based on its determination that appellant was unable to establish that Anchor Hocking manufactured the subject pitcher.

However, I respectfully disagree with the majority's discussion of, and reliance upon, *Roselli v. General Electric Co.*, 410 Pa.Super. 223, 599 A.2d 685 (1991), *appeal discontinued* (1993). As the author of *Troy v. Kampgrounds of America, Inc.*, 399 Pa.Super. 41, 581 A.2d 665 (1990), I agree with Judge Del Sole's dissent in *Roselli*. As Judge Del Sole correctly observes:

> In a case such as this where the product no longer exists and cannot be examined by either party, the plaintiff may recover under the 'malfunction' theory of product liability, which concerns circumstantial evidence of a product malfunction. This theory 'permits a plaintiff to prove defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable secondary causes for the malfunction.' *Troy v. Kampgrounds of America, Inc.*, 399 Pa.Super. 41, 581 A.2d 665 (1990).

*Roselli*, 410 Pa.Super. at 230, 599 A.2d at 689 (dissent by Del Sole, J.).

present in all of a manufacturer's products although we agree that the qualification is appropriate. As we note above, however, our agreement does not support reversal in this case, because DeWeese simply has not established a factual issue regarding the manufacturer of the allegedly defective water pitcher.

Thus, to the extent that the majority relies upon *Roselli* to affirm the order granting summary judgment, I disagree. I believe that had appellant been able to identify Anchor Hocking as the manufacturer of the pitcher, then under the "malfunction theory" this case would have survived beyond the summary judgment stage. It is only because of appellant's failure to identify the manufacturer that I concur with the majority's decision to affirm the order granting summary judgment.