**Kelly A. SCHROEDER, Individually and as Administratrix of the Estate of Gary H. Schroeder, Appellant,**

v.

**DEPARTMENT OF TRANSPORTATION OF the COMMONWEALTH OF PENNSYLVANIA, Navistar International Transportation Corp., a/k/a International Harvester Co., and Sheets Truck Center, Inc.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1996.

Decided April 22, 1996.

Reargument Denied June 10, 1996.

Jennifer M. McHugh, for Appellant.

J. Elise Tourek, Senior Deputy Attorney General, for Appellee, Department of Transportation.

Robert J. Hafner, for Appellee, Navistar International Transportation Corp..

Karen L. Hughes, for Appellee, Sheets Truck Center, Inc.

Before McGINLEY and FLAHERTY, JJ., and RODGERS, Senior Judge.

McGINLEY, Judge.

Kelly A. Schroeder (Appellant) appeals from an order of the Common Pleas Court of Washington County (trial court) which granted the motions for summary judgment of the Department of Transportation (DOT), Navistar International Transportation Corp. (Navistar) and Sheets Truck Center, Inc. (Sheets) (collectively Appellees). We affirm.

The relevant facts as found by the trial court are as follows:

Navistar designed and manufactured the cab and chassis of the 1987 International truck, Model S 1900, the subject of this civil action, and sold the 'incomplete vehicle' to Sheets in August 1986. [Gary H. Schroeder (Decedent) ] and [Appellant] purchased the vehicle from Sheets in 1988. At some point prior to the accident, the length of the frame rails had been modified by cutting them and welding the frame rails back together, i.e. shortening the length of the truck. (Footnote and citations omitted).

On May 5, 1991, [Decedent] was operating the vehicle on State Route 18 in Mt. Pleasant Township, Washington County, Pennsylvania. [Decedent] lost control of the vehicle. The truck crossed into the northbound lane of the highway, struck an embankment, and turned over. At the time [DOT] had been doing construction work and had cut away the berm on the southerly side. There were no eyewitnesses to the accident.

A police officer on his way to work that morning came upon the truck, noticing that the front wheels were still spinning. The roof on the operator's side was partially crushed. While the officer was trying to help [Decedent] who was trapped inside

the cab, a fire ignited in the engine area and consumed the cab. The officer stated that the operator was still alive until the fire broke out. [Decedent] died at the scene.

After the accident, the remains of the truck were taken to the Insana Towing facility in Washington, Pennsylvania. Margala & Sons Salvage (Margala) of Youngstown, Ohio, arranged to purchase the wrecked truck from Great American Insurance Company, through Flauto Adjusting Service, and picked up the vehicle on June 14, 1991. On June 18, 1991, counsel for [Appellant] asked Margala not to salvage or destroy the vehicle until arrangements could be made to examine it. By this time, the record shows that [Appellant] was already represented by counsel. Margala agreed to preserve the wreckage on June 24, 1991 for [sic] storage fee of $15.00 per day until the inspection could be made. On July 26, 1991, [Appellant] signed the title for the truck over to her insurer, Great American. On August 6, 1991, Great American signed the truck over to Margala.

Kathleen J. Haynes, Esq., of the law firm of Rhoads & Simon [sic], counsel for [Appellant], visited the Margala salvage yard in Youngstown on August 23, 1991, with an investigator. (Citation omitted). Ms. Haynes says that she told Margala that the vehicle remains should be preserved until further notice by her law firm and that an agreement had been reached with Margala to preserve the vehicle.

Although Margala contends that no agreement was reached, the conflicting evidence must be construed in favor of the [Appellant]. Despite this agreement, she states that by February 1992, Margala had sold some of the parts.

Opinion of the trial court, May 3, 1995, at 4–6.

Appellant filed suit against Appellees in the trial court on October 13, 1992, alleging that the Appellees were liable for the death of Decedent.[1] Appellant's complaint alleged, among other things, that Navistar and Sheets were strictly liable as manufacturer and seller of the defective truck and that DOT negligently maintained the highway which caused Decedent to lose control of his vehicle.

On June 10, 1993, counsel for DOT requested by letter that Appellant allow DOT to have an expert examine the truck. Appellant's counsel never responded. After receiving no response from Appellant DOT presented a motion to compel which was granted by the trial court and Appellant was ordered to make the truck available to DOT for an examination. In response Appellant's counsel advised DOT that the truck was in storage at Margala & Sons and counsel promised to arrange for DOT to examine it. When DOT contacted Margala & Sons, DOT was advised that the truck had been salvaged.

On August 12, 1994, Appellees separately filed motions for summary judgment contending that Appellant's failure to preserve the vehicle effectively precluded them from defending against Appellant's contentions that Decedent died as a result of a defect in the truck or because of any negligent maintenance of the highway. On May 3, 1995, after reviewing the briefs filed and hearing oral argument the trial court granted summary judgment in favor of Appellees.

Before this Court Appellant contends that the trial court erred because: (1) her claim was based on a design defect of the vehicle; (2) the parts were sold by a neutral third party after the vehicle was largely consumed by fire; and (3) the Appellees failed to show any significant prejudice. Our scope of review over a trial court's grant of summary judgment is limited to determining whether the trial court made an error of law or abused its discretion. *Salerno v. LaBarr,* 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *appeal denied,* 537 Pa. 655, 644 A.2d 740 (1994).

1. Appellant originally filed suit against Appellees on July 27, 1991, in the United States District Court of the Western District of Pennsylvania but subsequently discontinued this federal court action without prejudice because the claim was not properly within the jurisdiction of the federal court and the claim against the Commonwealth was barred by the Eleventh Amendment.

■ "Summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b); *DeWeese v. Anchor Hocking Consumer and Industrial Products Group,* 427 Pa.Superior Ct. 47, 628 A.2d 421, 422 (1993). The moving party bears the burden of demonstrating that no material issue of fact remains and summary judgment should only be granted in cases that are free and clear of doubt. *Salerno.* When considering a motion for summary judgment the trial court must review the record in the light most favorable to the non-moving party. *Id.*

In granting Appellees' motions for summary judgment the trial court relied on a line of cases which hold that "where a plaintiff brings an action claiming that he suffered injury as a result of a defective product, his failure to produce the product for inspection by the defense will render summary judgment against him appropriate." *DeWeese,* 427 Pa.Superior Ct. at 50, 628 A.2d at 423 (citing *Roselli v. General Electric Co.,* 410 Pa.Superior Ct. 223, 228, 599 A.2d 685, 687–88 (1991), *appeal granted,* 530 Pa. 645, 607 A.2d 255 (1992)). In these cases the courts recognized that by destroying or losing the remains of a product which is alleged to be defective the plaintiffs "preclude [defendant] from examining the product, a necessary step in the preparation of its defense." *Roselli,* 410 Pa.Superior Ct. at 228, 599 A.2d at 688.

Appellant contends the cases relied upon are distinguishable from the present one. Appellant contends that unlike the cases cited by the trial court, the present action alleges a design defect common to all trucks of the same make and model as Decedent's truck. Thus, Appellant asserts that Appellees' need to examine the actual truck involved in the accident is greatly reduced because all the trucks of that make and model contain the same defect. Appellant contends that Appellees are not prejudiced in preparing a defense and that she should not be barred from pursuing her claim.

Appellees contend that the trial court did not err in following *Roselli* and *DeWeese.* Appellees assert that the public policy reasoning set forth in these cases applies equally to a design defect case and a case alleging a defect in a particular product. We agree.

■ In *DeWeese* the Pennsylvania Superior Court acknowledged that it would be contrary to public policy to permit a cause of action to go forward without the allegedly defective product and noted:

To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear.

*DeWeese,* 427 Pa.Superior Ct. at 51, 628 A.2d at 423 (citing *Martin and Greenspan v. Volkswagen of America,* No. 88–8261, 1989 WL 81296 (E.D.Pa. July 13, 1989)).

Whether it is alleged that a single product contained a defect or that a defect existed in an entire line of products, the inability to examine the product which is alleged to have caused the injury precludes a defendant from presenting the standard products liability causation defenses. For example, in the present matter Appellees would be deprived of the opportunity to determine if the vehicle was abused, misused and whether Decedent's uncontested substantial alterations to the truck caused his death. Accordingly, we conclude that Appellees were severely prejudiced by the destruction of Decedent's truck.

■ Next, Appellant maintains that she made every attempt to preserve the remains of Decedent's truck and argues that she should not be penalized because Margala salvaged the remains without her knowledge. The case law is clear, where a plaintiff brings an action alleging an injury as a result of a

defective product it is that plaintiff's duty to preserve the product for defense inspection or forfeit the claim. Appellant did not preserve Decedent's truck and therefore summary judgment was appropriate. Although Appellant may not have known Margala's plans to salvage the truck, she voluntarily relinquished her title to the vehicle and offered no valid or justifiable reason for doing so.

Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of Appellees.

## ORDER

AND NOW, to wit, this 22nd day of April, 1996, the order of the Court of Common Pleas of Washington County at No. 92–6661, dated May 3, 1995, is affirmed.