## Heginbotham v. Bowser & Tarr Inc.

344

C.P. of Armstrong County, no. 1996-0018-CIVIL.

*James G. Gordon,* for plaintiffs.
*Frederick N. Egler Jr.* and *Edward L. Russakoff,* for defendants.
*Kenneth S. Mroz,* for additional defendant.

NICKLEACH, *P.J.,* August 21, 1997—Before the court for disposition are motions for summary judgment filed by all of the parties in this case. Initially, additional defendant Dana Corporation t/d/b/a Weatherhead[1] filed its motion for summary judgment on the ground of spoliation of the evidence. Next, defendants Bowser & Tarr Inc. and Newman James Tarr, filed a motion for summary judgment claiming that B & T is plaintiff Donald Heginbotham's statutory employer and that Tarr is a fellow employee. As such, plaintiffs' suit

---

1. In its motion, Weaterhead asserts that the designation is incorrect and should instead be Dana Corporation and Boston Weatherhead Division of Dana Corporation.

against them is barred pursuant to the Workers' Compensation Act, 77 Pa.C.S. §481. Finally, plaintiffs filed a cross-motion for summary judgment claiming that Donald Heginbotham was an employee of Transport Leasing/Contract Inc. (TLC). The motion asks the court to render judgment that Heginbotham was *not* the employee of B & T. The motions have been argued and briefs filed by all parties and the matter is now ready for decision.

## FACTUAL BACKGROUND

On May 15, 1995, plaintiff Donald W. Heginbotham, while off-loading liquid sugar from a tanker truck at a facility in Williamsport, Pennsylvania, was injured when a high-pressure hydraulic hose ruptured and spewed hydraulic fluid into his eyes.

The tanker truck was owned and serviced by defendant B & T. Heginbotham was the exclusive driver of the truck which hauled liquid sugar primarily for Allen Sugar Company in Cleveland, Ohio, but on occasion for other companies as well. Initially, Heginbotham was employed by B & T, but on April 5, 1993, B & T entered into a lease agreement with TLC whereby B & T's drivers (including Heginbotham) became employees of TLC and were then leased back to B & T.[2]

The deposition testimony indicates that TLC paid the drivers and deducted federal and state withholding taxes and remitted the same to the respective governments, paid and remitted social security taxes, unem-

---

2. The lease named R. T. Jacques Trucking as the lessee. The parties agree that B & T, as a partnership of Harold Bowser and William Tarr Sr., signed the agreement t/d/b/a R. T. Jacques Trucking, and that this agreement was in force on the date of the accident. A later lease back-dated to April 5, 1993 named B & T as lessee. The agreements otherwise are the same.

ployment insurance taxes, workmen's compensation insurance and also provided the drivers with optional health insurance, life insurance, retirement plans and flexible spending accounts. TLC did not direct the employees in the day-to-day driving operations of the trucks. In his deposition, Gary E. Ankerfelt, president of TLC, was unable to state who directed the day-to-day activities of Heginbotham. Heginbotham testified he was on his own concerning his hauling of liquid sugar and was not directed by B & T. Heginbotham testified that it was he who secured the Allen Sugar account and B & T's only connection was that it owned and serviced the truck which Heginbotham drove. Heginbotham indicated that he planned the routes which he took, the days which he drove, and other matters involving his day-to-day operations. If Allen Sugar Company had a load to carry, the company contacted him directly, or if the company couldn't reach him, it would leave a message at B & T's garage. If Heginbotham did not have a return load following a transport for Allen Sugar, he would contact other companies to arrange for a return haul, and if he could not find one, he would return empty.

The accident in this case occurred when Heginbotham was off-loading liquid sugar at an Allen Sugar plant in Williamsport, Pennsylvania. He was making adjustments to another hose attachment when the hydraulic hose ruptured. He was immediately hospitalized in the Williamsport area. Defendant Tarr, an employee of B & T, was dispatched to the scene in a pickup truck to complete the off-loading and return the truck to the garage. Tarr had installed the hose on the truck just prior to Heginbotham's trip to Williamsport. Tarr replaced the ruptured hose and completed the off-loading procedure. While in Williamsport, Tarr visited Heginbotham in the hospital and apologized to Heginbotham indicating that he (Tarr) had put the wrong type of

hose on the truck. The ruptured hose was thrown in the back of B & T's pickup truck which returned to the garage. The hose was subsequently discarded without being identified, photographed, inspected or tested.

Plaintiffs' amended complaint alleges negligence and spoliation against defendants, and product liability and breach of warranty against Weatherhead. Defendants assert product liability and breach of warranty against Weatherhead as an additional defendant.

## DISCUSSION

Motions for summary judgment are governed by Rule 1035.2 of the Pennsylvania Rules of Civil Procedure, which states:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

The party moving for summary judgment has the burden of proving that no genuine issue of material fact exists.[3] The nonmoving party must adduce sufficient evidence on the issues essential to his case and on which he bears the burden of proof such that the jury

---

3. *Butterfield v. Giuntoli,* 448 Pa. Super. 1, 670 A.2d 646 (1995); *First Wisconsin Trust Co. v. Strausser,* 439 Pa. Super. 192, 653 A.2d 688 (1995).

could return a verdict in his favor; failure to do so establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[4]

## Weatherhead's Motion

Weatherhead asserts in its motion that the loss of the evidence upon which plaintiffs base their claim, namely the ruptured hose, requires summary judgment in its favor.

The leading case on spoliation as a ground for summary judgment is *Roselli v. General Electric Company*, 410 Pa. Super. 223, 599 A.2d 685 (1991). In that case, plaintiff suffered severe burns when the glass carafe to her General Electric coffee maker shattered in her hand. The trial court granted summary judgment on the ground that the fragments from the glass carafe which were lost, were unavailable for inspection. Thus, the source of the carafe could not be determined. The Superior Court affirmed adopting the public policy rationale of *Martin and Greenspan v. Volkswagen of America*, No. 88-8261, 1989 WL 81296 (E.D. Pa. July 13, 1989):

"The defendant has been deprived of the opportunity to have an expert examine the car and to testify, if appropriate, that a defect did not cause the Audi to malfunction. Therefore, the plaintiffs should not be permitted to proceed without producing the vehicle. . . .

"To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and

---

4. *Ertel v. Patriot-News Co.,* 544 Pa. 93, 674 A.2d 1038 (1996); see also, *Accu-Weather Inc. v. Prospect Communications Inc.*, 435 Pa. Super. 93, 644 A.2d 1251 (1994) (the nonmoving party may not rest upon the averments contained in its pleadings, but must demonstrate that there is a genuine issue for trial).

make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear." *Roselli v. General Electric Company, supra* at 228, 599 A.2d at 687-88.

The Commonwealth Court in *Schroeder v. PennDOT* 676 A.2d 727 (Pa. Commw. 1996), *alloc. granted,* 546 Pa. 672, 685 A.2d 549 (1996), followed *Roselli* in affirming entry of summary judgment in favor of the defendants. In *Schroeder*, plaintiff's decedent died when the truck he was driving crossed the highway, struck an embankment, overturned and burned. The truck's charred remains where taken to a salvage facility. Despite requests from plaintiff's counsel not to salvage or destroy the vehicle, the truck was salvaged and not available to the defendants. The trial court granted summary judgment relying on *Roselli* and holding that when a plaintiff brings an action for injury as the result of a defective product, his failure to produce the product renders summary judgment appropriate because the defendant is precluded from examining the product which is a necessary part of its preparation of a defense. On appeal, the plaintiff attempted to distinguish *Roselli* by pointing out that his case, unlike *Roselli,* alleged a design defect common to all trucks of the same make and model as decedent's truck. Thus, the need to examine the actual truck was not as great because all makes and models contained the same defect. Plaintiff argued that defendants were not prejudiced in preparing their defense. The Commonwealth Court refused to distinguish *Roselli* and held that it was immaterial that the

allegation was a defective design of the product. In so holding, the court stated:

"Whether it is alleged that a single product contained a defect or that a defect existed in an entire line of products, the inability to examine the product which is alleged to have caused the injury precludes a defendant from presenting the standard products liability causation defenses. . . . Accordingly, we conclude that appellees were severely prejudiced by the destruction of decedent's truck." *Id.* at 730.

In the most recent spoliation case, *O'Donnell v. Big Yank Inc.*, 696 A.2d 846 (Pa. Super. 1997), the Superior Court took a position contrary to the Commonwealth Court's holding in *Schroeder* and limited the holding in *Roselli.*

In *O'Donnell*, plaintiff was injured when he contacted electrical voltage and was burned. He alleged that his garments, manufactured and sold by defendants, ignited and melted, producing a hot tarry substance which contacted his skin. Plaintiff alleged that the pants were defective when sold. The clothes which the plaintiff wore had been discarded and were unavailable for inspection by the defendants. The trial court, relying on *Roselli,* granted summary judgment partly on the spoliation theory that defendants could not pursue their defenses because of the loss of the product. The Superior Court reversed.

The Superior Court held that the trial court erred in interpreting *Roselli* as holding that whenever a key piece of evidence is destroyed and defendant is unable to examine the product, the spoliation doctrine prevents testimony concerning the product and that summary judgment must be entered. That interpretation, the court said, was too broad. In *Roselli*, the plaintiff was unable to offer evidence in support of her claim of defect. Because she could not do so, summary judgment was warranted.

In *O'Donnell,* the court determined that where the injured party is not claiming a defect particular to the item, but rather a defect which occurs in all like products manufactured and sold by the defendants, *i.e.* where an examination of the specific product is not necessary to determine the validity of the claim, then summary judgment is not required when the specific article cannot be produced. The court went on to hold that plaintiffs could prove their case with the introduction of like products manufactured by the defendant.[5]

In the court's opinion, *Roselli v. General Electric Company, supra,* even with the limited interpretation given to it by the court in *O'Donnell v. Big Yank Inc., supra,* is controlling in the case at bar. In the present case, plaintiffs are unable to offer evidence in support of their claim that the hydraulic hose was defective. Unlike *O'Donnell,* plaintiffs do not claim that the defect occurs in all like products manufactured by the defendants. Instead, plaintiffs claim a defect in the specific hose attached to the hydraulic pump.[6] Consequently, unlike *O'Donnell,* plaintiffs cannot prove the defect by utilizing other hoses manufactured by Weatherhead. Here, as in *Roselli,* examination of the specific product is necessary to determine the validity of plaintiffs' claim. Since plaintiffs cannot otherwise prove the ruptured hose was defectively manufactured and sold, the absence

---

5. Plaintiffs alleged that the garment was constructed of a highly flammable material which was easily ignited and which melted into a hot tar-like substance, a defect common to all similar types of garments manufactured by the defendant. The court observed that plaintiff could seek to prove her case by introducing like products manufactured by the defendants and the defense also could use like products to show its flammability (or lack thereof) in different situations.

6. Paragraph 24 of plaintiffs' amended complaint defines "product" as "the hydraulic hose which ruptured."

of the hose renders summary judgment appropriate in this case. *Roselli, supra.*

*Defendants' Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment*

Both defendants and plaintiffs seek a summary judgment as to the employer of Heginbotham at the time of the accident. We have reviewed the lease relied upon by plaintiffs and the deposition testimony of the various witnesses. We conclude that a material issue of fact exists as to who, if anyone, was Heginbotham's employer on the date of the accident. See *JFC Temps Inc. v. W.C.A.B. (Lindsay)*, 545 Pa. 149, 680 A.2d 862 (1996); *Wilkinson v. K-Mart*, 412 Pa. Super. 434, 603 A.2d 659 (1992); *Red Line Express Co. Inc. v. W.C.A.B. (Price)*, 138 Pa. Commw. 375, 588 A.2d 90 (1991), *alloc. denied*, 529 Pa. 654, 602 A.2d 863 (1992). Therefore, defendants' motion for summary judgment and plaintiffs' cross-motion for summary judgment will be denied.

An appropriate order will be entered.

### ORDER

And now, to wit, August 21, 1997, after consideration of the arguments and briefs of counsel and for the reasons set forth in the attached opinion, it is ordered, adjudged and decreed that the motion for summary judgment filed on behalf of Dana Corporation t/d/b/a Weatherhead, a foreign corporation, be and the same hereby is granted and judgment is hereby entered in favor of the defendant Dana Corporation t/d/b/a Weatherhead, a foreign corporation.

It is further ordered, adjudged and decreed that the motion for summary judgment filed on behalf of defendants Bowser & Tarr Inc. and Newman James Tarr be and the same hereby is denied.

It is further ordered, adjudged and decreed that plaintiffs' cross-motion for summary judgment be and the same hereby is denied.