Justin E. **SEBELIN**, a Minor, By and Through His Parent and Natural Guardian, Debra L. **SEBELIN** and Debra L. Sebelin in Her Own Right, Appellants,

v.

**YAMAHA MOTOR CORPORATION, USA,** a California Corporation with a Principal Place of Business and/or Offices at c/o Ct. Corporation System and Yamaha Motor Co., Ltd., and Lehigh Coal and Navigation Company, a Pennsylvania Corporation.

Superior Court of Pennsylvania.

Argued Nov. 6, 1997.

Filed Jan. 5, 1998.

---

Donald J. Feinberg, Philadelphia, for appellants.

Gerald R. Whitcomb, Bethlehem, for Yamaha Motor Corp., appellee.

Patrick J. Murphy, Scranton, Lehigh Coal & Navigation Co., appellee.

Before CIRILLO, President Judge Emeritus, and JOHNSON and HOFFMAN, JJ.

CIRILLO, President Judge Emeritus:

Debra L. Sebelin, on behalf of herself and her minor child, Justin Sebelin, (collectively "the Sebelins") appeal from the order entered in the Court of Common Pleas of Carbon County granting summary judgment in favor of appellees Yamaha Motor Corporation U.S.A., Yamaha Motor Co. Ltd. (Yamaha) and Lehigh Coal and Navigation Company (Lehigh). *See* Pa.R.A.P. 341; Pa. R.C.P. 227.1, note. We reverse and remand.

In reviewing an order granting a motion for summary judgment, an appellate court must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Merriweather v. Philadelphia Newspapers, Inc.,* 453 Pa.Super. 464, 684 A.2d 137 (1996) (citation omitted). *See generally* Pa.R.C.P. 1035.2, 42 Pa.C.S.A.

In conformance with the above standard, the facts read in the light most favorable to the non-moving party are as follows: On February 6, 1993 Justin Sebelin (then fifteen years of age) was injured while operating a 1990 Blaster all-terrain vehicle (ATV) manufactured by Yamaha on appellee Lehigh's property.[1] Justin did not own the ATV;

1. Justin Sebelin did not have Lehigh's permis- sion to operate the ATV on Lehigh's land. In

rather, he had permission to operate it from its owner, Michael Gruber. Justin incurred his injuries when he and a compatriot circumvented a closed gate to gain entrance to Lehigh's property. While traversing Lehigh's property, Justin attempted to evade a fallen tree branch at which time the ATV's front two wheels lifted off the ground causing Justin to lose control and smash into a nearby tree. After the accident, Lehigh took possession of the ATV but eventually relinquished the ATV to the Borough of Nesequehonig Police Department in late February or early March which impounded the ATV in a secure fenced-in area. The ATV remained in police custody until November 24, 1995 when police discovered that it had been stolen from the impoundment lot.

The Sebelins instituted the present premises and products liability action against Lehigh and Yamaha respectively by writ of summons on March 2, 1995 and filed a complaint shortly thereafter. In their complaint, the Sebelins alleged that Justin's injuries were caused by a design defect in the 1990 Yamaha Blaster. Specifically, the Sebelins alleged that the Blaster was inherently unstable and the instability caused Justin to lose control of the ATV. The complaint also alleged that Lehigh was negligent in failing to exercise reasonable care to clear obstacles on its property. Upon filing the complaint, the Sebelins' counsel contacted Chief Tout of the Nesquehoning Police Department requesting to have the ATV preserved due to impending litigation. Additionally, Sebelins' counsel informed counsel for Yamaha and Lehigh that the ATV was in police custody. Prior to the ATV having been stolen, however, neither the Sebelins nor defendants ever procured experts to review the ATV.

Yamaha and Lehigh filed a motion for summary judgment asserting that they were severely prejudiced by the absence of the ATV. Specifically, Yamaha asserted that because they could not inspect the ATV, they had effectively been deprived of the opportunity of presenting causation defenses such as misuse or modification of the allegedly defec-

tive product. Lehigh also asserted loss of presentation of a causation defense. The trial court accepted Lehigh and Yamaha's arguments and granted their summary judgment motion on the basis that the ATV had been spoiled. This appeal followed. The Sebelins present the following issues for our consideration:

1. Whether the trial court committed an error of law or abused its discretion by granting summary judgment, in a products liability—design defect case, in favor of the product's manufacturer based solely on the spoilation of the product, through no fault of Plaintiffs', after unknown person(s) stole the product out of police custody and where Defendants had ample time to inspect the product?

2. Whether the trial court committed an error of law or abused its discretion by granting summary judgment to a premise [sic] liability Defendant on the basis of spoilation, where, through no fault of Plaintiffs', unknown person(s) stole the product out of police custody and where Defendant had ample time to inspect the product?

3. Whether the trial court committed an error of law or abused its discretion by granting summary judgment to a premise [sic] liability Defendant on the basis that no genuine issues of material facts [sic] exist where minor Plaintiff was riding an ATV on Defendant's property, as he and numerous others had done in the past, and where Defendant knew that ATV enthusiasts were using their property to ride ATVs but did nothing to safeguard the ATV rider's safety and did not effectively prevent their ingress to their premises?

 Initially, we note that our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Banks v. Jerome Taylor & Associates,* 700 A.2d 1329, 1331 (Pa.Super.1997) (*citing Merriweather v. Philadelphia Newspapers, Inc.,* 453 Pa.Super. 464,

---

fact, Sebelin was convicted of the misdemeanor of defiant trespass in connection with his operation of the ATV the day he was injured. *See*

*Commonwealth v. Sebelin,* 156 CR 96 (Carbon County Court of Common Pleas 1993).

470–72, 684 A.2d 137, 140 (1996)). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2, 42 Pa.C.S.A. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law. *Id.*

The Sebelins' first two issues question the propriety of the trial court's decision to apply the spoliation of evidence doctrine to grant summary judgment in appellees' favor. Specifically, the Sebelins assert that summary judgment was inappropriate because: (1) the Sebelins neither owned nor controlled the ATV at any time following the accident; and (2) the Sebelins' suit was based upon the allegation that the ATV was designed defectively, thereby permitting defendants to inspect any Yamaha Blaster ATV and present a defense to refute their allegation.

The spoliation of evidence doctrine first appeared in modern Pennsylvania jurisprudence in the case of *Roselli v. General Elec. Co.*, 410 Pa.Super. 223, 599 A.2d 685 (1991). In *Roselli*, plaintiff alleged that she suffered personal injuries when a glass carafe from a coffee maker shattered in her hand, thereby spraying scalding coffee onto her body and causing severe burns. Plaintiff filed suit against General Electric Company (GE), the manufacturer of the coffee maker, alleging that her particular carafe was defective which caused it to shatter. After plaintiff failed to produce the shattered carafe to GE for inspection, the trial court granted summary judgment, reasoning that because plaintiff had not alleged that all carafes in GE coffeemakers were defective, plaintiff could not prove essential elements of her case, namely the manufacturer of the carafe and deprived the defense of countering the defect by expert testing on her particular carafe. This court affirmed explaining that not only would the defense be materially hampered due to plaintiff's failure to produce the carafe, but, equally important, plaintiffs could not prove that the malfunction occurred in the absence of abnormal use or reasonable secondary causes (i.e., that the glass carafe could have broken due to use and handling).[2]

Subsequent to *Roselli*, this court decided *DeWeese v. Anchor Hocking*, 427 Pa.Super. 47, 628 A.2d 421 (1993). In *DeWeese*, plaintiff was injured when a glass pitcher exploded while he was filling it with hot water. After the accident occurred, staff at the country club where plaintiff was working cleaned up the shattered pitcher and discarded the shards. Plaintiff filed suit against Anchor Hocking and Lewis Brothers alleging that the pitcher was defective. Both defendants moved for summary judgment. The trial court granted the motion on the ground that the absence of the pitcher remnants precluded them from preparing viable defenses. On appeal, this court affirmed finding that plaintiff had failed to prove an essential element of his case, namely that the allegedly defective pitcher was manufactured by Anchor Hocking or sold by Lewis Brothers. *See Berkebile v. Brantly Helicopter*, 462 Pa. 83, 337 A.2d 893 (1975). We did not reach the question of whether the doctrine of spoliation as discussed in *Roselli* applied to

---

**2.** We further explained that it would be contrary to public policy to permit plaintiffs to proceed in cases where the plaintiff had control over the allegedly defective item and failed to produce that item for inspection:

> To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item

would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear.

*Roselli*, 410 Pa.Super. at 226–30, 599 A.2d at 687–88. Thus, plaintiff's control of the lost product was another important factor weighing in our determination to affirm the trial court's grant of summary judgment.

cases where plaintiff alleged a defect in design rather than in the particular product. In dicta, however, the court acknowledged that the spoilation of evidence doctrine was a harsh remedy and that in cases where the defendant is not prejudiced by the lack of the evidence, summary judgment may be inappropriate. *See DeWeese*, 427 Pa.Super. 47, 628 A.2d 421 (1993) ("Thus, Deweese contends, Anchor Hocking is not prejudiced in preparing a defense because an inspection of the discarded pitcher would serve no useful purpose. While we find this argument persuasive, we are constrained to affirm.")

In *O'Donnell v. Big Yank, Inc.*, 696 A.2d 846 (Pa.Super.1997), this court continued to grapple with the question of when spoiled evidence warrants the grant of summary judgment. In *Big Yank*, plaintiff was injured when electrical voltage which arced from an underground substation ignited his pants, which quickly melted and produced a hot tarry substance that caused or substantially enhanced his burn injuries. Subsequent to his injury, plaintiff discarded the pants. Plaintiff filed suit against the seller and the manufacturer of the pants, K-mart and Big Yank respectively, alleging that the pants were defectively designed. Defendants moved for summary judgment on the grounds that plaintiff could not prove that Big Yank was the manufacturer and that the absence of the trousers prevented defendants from pursuing the defense that grease on the pants rather than the pants themselves caused the fire. The trial court accepted both arguments and granted summary judgment. On appeal, this court reversed. We explained that because plaintiff had alleged that the pants were defectively designed, their absence did not materially hamper defendants' presentation of a defense, since defendants could examine other exact model pants and perform tests on those pants to support their causation defense.[3] Additionally, we noted that plaintiff could also disprove defendants' theories by performing his own battery of tests upon the pants. Finally, we distinguished the present situation from

*DeWeese*, because unlike in *DeWeese*, the plaintiff in the present case was prepared to offer evidence that K-mart was the seller and Big Yank was the manufacturer of the pants.

Implicit in our holding in *Big Yank* was the recognition that the determination of whether spoiled evidence merited summary judgment must be accomplished on an *ad hoc* basis. Because defendants were not substantially hampered in the presentation of a defense and because plaintiff could make out a *prima facie* case of products liability, we concluded that summary judgment was an inappropriate and inequitable remedy for the spoilation of the pants.

In the recent case of *Long v. Yingling*, 700 A.2d 508 (Pa.Super.1997), this court again was faced with the question of the appropriate remedy for the spoilation of evidence. In *Long*, plaintiff and her deceased husband were engaged in a test drive of one of defendant's vehicle's when the car failed to stop at a stop sign and collided with another vehicle causing serious injuries to plaintiff and killing plaintiff's husband. Plaintiff then filed suit alleging that the vehicle's brakes were defective. At the time suit was initiated, the brake parts were in the possession of Donaldson's Salvage Yard. Plaintiff's attorney attempted to preserve the brake parts by issuing a rule returnable to the salvage yard owner and the defendant. When plaintiff's agent attempted to secure the brake parts, however, they were missing. Thereafter, defendant filed a motion for summary judgment which the trial court granted. This court reversed, explaining that because plaintiff was not in control of the missing part and because plaintiff diligently attempted to maintain the brake parts, summary judgment was not proper. *Id.* at 514. In so finding, we noted that although defendant may be hampered in presenting his defense, summary judgment would not be proper because defendant was the owner of the allegedly defective brakes and they remained in his control. *Id.*

---

3. Specifically, we noted that defendants could offer evidence at trial that the pants do not act in a harmful manner under the conditions that caused plaintiff's injuries. Additionally, defendants could offer evidence regarding the flammability of its product in a variety of situations such as repeated washing and placing various substances on the pants' surface.

■ From the foregoing, it is evident that certain factors must be considered prior to granting summary judgment based upon the doctrine of spoilation of evidence. Initially, we note that it is clear that spoilation of evidence should not automatically warrant summary judgment in product liability cases. *Long, supra; Big Yank, supra; DeWeese, supra.* Rather, the facts and circumstances surrounding the particular case play a critical role in discerning the appropriateness of determining whether summary judgment is proper. *Id.* That being said, the above cases demonstrate that certain factors should be considered when assessing whether to grant summary judgment in products liability actions where the product is spoiled. First, courts must assess the fault of the party who altered or destroyed the evidence. *See Long, supra* (defendant who retained control over allegedly defective brakes that eventually were missing did not deserve summary judgment based upon the spoilation of the brakes; the policy behind the spoilation of evidence would be thwarted where plaintiff was not in a position to engage in any wrongdoing). Second, courts must assess the degree of prejudice resulting from the failure to produce the allegedly defective item for inspection. *Compare Roselli, supra* (plaintiff's failure to produce the shattered glass carafe materially hampered presentation of defendant's causation defense since plaintiff only alleged that her particular carafe was defective) *with Big Yank, supra* (failure to produce pants did not materially hamper defense because plaintiff alleged design defect in the entire product line). *See also Quaile v. Carol Cable Co., Inc.,* 1993 WL 53563 (E.D.Pa.1993) (because plaintiff claimed that design defect in lamp caused injury, fact that plaintiff disposed of lamp did not warrant summary judgment; defendant could examine its other lamps and adequately prepare a defense).[4] We also point out that in cases where the allegedly defective product's absence is not so grave as to warrant summary judgment, but the plaintiff is charged with some fault in the product's absence, less

harsh sanctions are available such as charging the jury with an adverse inference instruction. *See Schmid v. Milwaukee Electric Tool Inc.,* 13 F.3d 76 (3d Cir.1994) ("the admissibility of spoilation evidence and the propriety of the spoilation inference is well established in most jurisdictions, including Pennsylvania").

■ Of course, even in cases where summary judgment is not appropriate on spoilation grounds, courts must nonetheless conduct the normal summary judgment analysis. *Banks, supra.* That is, courts must ascertain whether, in the absence of the defective product, plaintiff can assert triable issues of fact. *See DeWeese, supra* (summary judgment was proper where plaintiff could not prove that defendant manufacturer actually made the spoiled product). *See also Lee v. Boyle–Midway Household Products, Inc.,* 792 F.Supp. 1001 (W.D.Pa.1992) (plaintiff who claimed that defendant's drain cleaner was defective but had lost the container presented no evidence to prove that the product was in fact manufactured by defendant, thus, summary judgment was appropriate).

Instead of utilizing the above analysis, the trial court in the present case granted summary judgment solely because the Sebelins failed to preserve the ATV. In so finding the trial court concluded that the recent Commonwealth Court decision in *Schroeder v. DOT,* 676 A.2d 727 (Pa.Commw.1996), *allocatur granted,* 546 Pa. 672, 685 A.2d 549 (1996) was controlling. In *Schroeder,* plaintiff's decedent was killed when his truck caught fire after he lost control of his truck, which hit an embankment and turned over. After the accident, the remains of the truck were taken to a salvage yard that purchased the wrecked truck from decedent's insurer after plaintiff voluntarily signed title over to the insurer. Plaintiff, through her attorney, requested that the salvage yard not sell or destroy the vehicle until it could be examined. Despite agreeing to preserve the vehicle, the salvage yard began selling parts of the truck. Even-

---

4. This analysis was performed most recently in *Dansak v. Cameron Coca–Cola Bottling Co. et al.,* 703 A.2d 489 (Pa.Super.1997). In *Dansak,* a panel of this court determined that summary judgment on spoilation grounds was improper in

a products liability action based upon the malfunction theory where neither plaintiff nor defendants were responsible for the loss of the allegedly defective product and defendants were not precluded in presenting an adequate defense.

tually the entire truck was salvaged. Plaintiff then filed suit against the manufacturer and seller of the truck alleging that it was defective. Plaintiff also sued DOT alleging that DOT negligently maintained the highway causing decedent to lose control of his truck. Defendants moved for summary judgment on the grounds that the truck had been spoiled which the trial court granted. The Commonwealth Court affirmed, concluding that plaintiff is vested with the absolute responsibility for preserving the evidence and failed to do so, consequently summary judgment was proper. *Id.* at 730–31. The Commonwealth Court also held that whether plaintiff alleged a design defect or a single product defect was of no consequence, because in both circumstances the inability to examine the product precludes a defendant from presenting standard products liability causation defenses. *Id.*

We expressly disagree with the Commonwealth Court's assumption that prejudice to a defendant is the same whether the product is spoiled in a design defect case or in a single product defect action.[5] As explained in *Big Yank, supra,* prejudice to a defendant in a single defect case is generally much more severe since the spoiled product is forever lost and therefore there is no way to adequately test the particular product for the alleged defects. In a design defect case, however, the necessity to have the actual product is lessened, since the action is based upon the fact that the product was designed defectively. Thus, the defendant can test any product under a variety of different situations to support causation defenses. *Big Yank, supra.* Additionally, to the extent the *Schroeder* opinion attempts to promulgate a rigid rule, thereby diverging from this court's case by case approach, we expressly disapprove of such a rule. We do not, however, pass judgment upon whether under these facts this court would have made a different determination.

Applying our spoilation analysis to the present case, the record reveals that neither the Sebelins nor the appellees were the owners or in control of the ATV. *Cf. Long, supra* (defendants were at all times in possession or control of the brake parts). The record further reveals that the Sebelins requested that the police preserve the ATV but failed to take any legal action to attempt to preserve the ATV either physically or through some other media (videotape, photographs, etc).[6] *Cf. Long, supra* (plaintiff who issued a rule returnable to salvage yard to preserve the brake parts constituted a diligent effort to preserve the parts). Additionally, defendants have alleged that they have suffered substantial prejudice as a result of the spoiled ATV because they can never inspect the ATV to determine whether it was misused or altered in support of a causation defense. On the other hand, however, because the Sebelins have alleged a design defect rather than that the particular ATV was defective, appellees could conduct tests on any Blaster ATV in support of their defense for misuse or alteration. *See Big Yank, supra.*

After carefully weighing all these considerations, we conclude that defendants have not been so prejudiced as to warrant the premature entry of summary judgment on spoilation grounds. Defendants' causation defenses have not been substantially impaired because they can perform various tests on another Blaster ATV and use their findings as support for a causation defense. *See Big Yank, supra.* Thus, we conclude that the trial court erred in granting summary judgment.[7]

Supplementing our fault/prejudice/control analysis, we must, of course, determine whether the Sebelins have established prima facie elements to proceed in products liability. *See Big Yank, supra.* If

---

**5.** Commonwealth Court cases are not binding on this court. *See Commonwealth v. McDermott,* 377 Pa.Super. 623, 630–31, 547 A.2d 1236, 1240 (1996).

**6.** We note that although the Sebelins did not try to preserve the ATV through any formal discovery mechanisms, we do not necessarily find them derelict. The Sebelins were well warranted in

assuming that the ATV would remain secure at the police station. In fact, we cannot think of a safer place to store important evidence than at a police station.

**7.** Although we have determined that summary judgment is inappropriate, we do not pass judgment on whether some lesser sanction may be warranted. *See Schmid, supra.*

the Sebelins cannot make out their case, then summary judgment is appropriate irrespective of fault. *See DeWeese, supra* (plaintiff must meet its burden of proving triable issues on all elements; failure to do so warrants summary judgment). In the present case, therefore, the Sebelins are charged with proving: (1) the defect proximately caused injury to him or her; (2) the defect existed at the time the product left the manufacturer's control; and (3) the injuries were caused by the product of a particular manufacturer. *DeWeese*, 427 Pa.Super. at 50–51, 628 A.2d at 423 (citations omitted). Here, the Sebelins have presented evidence via expert reports that the ATV was defectively designed and the defective design proximately caused Justin's accident. In addition, because the Sebelins are alleging a design defect, it is axiomatic that the defect was present at the time it left Yamaha's control. Finally, there is no dispute regarding the manufacturer of the ATV; Yamaha has admitted that it manufactured and designed the ATV. Thus, the Sebelins have clearly satisfied their burden of asserting triable issues of material fact. Pa.R.C.P. 1035.2. The trial court's entry of summary judgment on the products liability claim, therefore, was in error. *Banks, supra.*

The Sebelins, in their third claim, assert that the trial court also erred in granting summary judgment in favor of appellee Lehigh on its premises liability claim. Because the trial court granted summary judgment on the premises liability claim based solely on spoilation of the ATV, we conclude that its grant of summary judgment on the premises liability action was also in error. We do not decide the question of whether summary judgment is appropriate for some other reason, however, since the trial court did not make such a finding. On remand, therefore, the trial court must determine whether summary judgment in the premises liability action against Lehigh may be appropriate on alternative grounds.

Order reversed. Case remanded. Jurisdiction relinquished.